IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BALFOUR BEATTY INFRASTRUCTURE, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. RDB-15-1745 |
| | * | |
| MAYOR AND CITY COUNCIL OF BALTIMORE, | * | |
| | * | |
| Defendant. | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM OPINION

Plaintiff Balfour Beatty Infrastructure, Inc. ("Plaintiff" or "BBII") has brought this action against Defendant Mayor and City Council of Baltimore[1] ("Defendant" or "the City"), alleging breach of contract and breach of implied warranty, and seeking declaratory relief.[2]  Compl. at ¶¶ 177-245, ECF No. 1.  The predecessor company of BBII, Fru-Con Construction, LLC, filed a similar action against the City, which was previously dismissed by this Court for lack of subject matter jurisdiction.  *See Fru-Con Const., LLC v. Mayor and City Council of Baltimore*, No. RDB-14-0434, 2014 WL 6675625 (D. Md. Nov. 24, 2014).  Currently pending before this Court is Defendant's Motion to Dismiss this Complaint for Lack of

---

[1] The Baltimore City Charter provides that "[t]he inhabitants of the City of Baltimore are a corporation, by the name of the 'Mayor and City Council of Baltimore,' and by that name . . . may sue and be sued." Baltimore City Charter art. 1, § 1.

[2] Plaintiff alleges that this Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1332 ("Diversity of Citizenship"). Compl. at ¶ 8.  BBII is a Delaware corporation with its principal place of business in Atlanta, Georgia, the City is a municipality within the State of Maryland, and the amount in controversy exceeds $75,000. *Id.* at ¶¶ 6-10.  However, as discussed herein, Defendant contests jurisdiction on the grounds that Plaintiff has failed to exhaust its administrative remedies.

Subject Matter Jurisdiction (ECF No. 9).  BBII seeks to distinguish this case from the earlier case.  The parties' submissions have been reviewed, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2014).  For the reasons stated herein, Defendant's Motion to Dismiss (ECF No. 9) is GRANTED.

## BACKGROUND

In ruling on a motion to dismiss, this Court accepts the factual allegations in the complaint as true and construes those facts in the light most favorable to the plaintiff.  *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  The facts of this case, construed in the Plaintiff's favor, are as follows:

**I.      The SC 852R Contract**

In November of 2009, Fru-Con Construction Corporation entered into a contract with Defendant Mayor and City Council of Baltimore ("Defendant" or "the City") for the construction of the "SC 852R" Project, described as "Denitrification and Related Work for the Enhanced Nutrient Removal Facilities at Patapsco Wastewater Treatment Plant" (the "SC 852R Contract").  Compl. at ¶ 11, ECF No. 1; SC 852R, Compl. Ex. 1, ECF No. 1-1.  Shortly thereafter, "the SC 852R Contract was assigned by agreement with the City from Fru-Con Construction Corporation to Fru-Con Construction, LLC."  *Id.* at ¶ 12.  Subsequently, and with the City's agreement, "Balfour Beatty Infrastructure, Inc. [("Plaintiff" or "BBII")] acquired all membership interests in Fru-Con Construction, LLC and became its sole member."  *Id.* at ¶ 13.

## II.      The SC 845R Contract

In July of 2011, Fru-Con Construction, LLC entered into a contract with the City for

the construction of the "SC 845R" Project, described as "Nitrification Filters and Related

[Work] for the Enhanced Nutrient Removal Facilities at the Patapsco Wastewater Treatment

Plant" (the "SC 845R Contract").   *Id.* at ¶ 14; SC 845R, Compl. Ex. 2, ECF No. 1-2.

Subsequently, Fru-Con Construction, LLC was fully merged into BBII.   *Id.* at ¶ 15.

## III.     Dispute Resolution Provisions Governing Both Contracts

The Charter of Baltimore City, Article II, § 4(A)(g) provides the following:

> . . . Baltimore City may provide or require that *if there is a dispute between the parties involving $10,000 or more* over the terms of the contract or performance under the contract, *the dispute is subject to a determination of questions of fact by an officer or official body of Baltimore City*, subject to review on the record by a court of competent jurisdiction.  (emphasis added).

The City's Department of Public Works Specifications – Materials, Highway, Bridges,

Utilities, and Incidental Structures 2006 (the "Green Book") governs both contracts.   *Id.* at ¶

21.   "To prevent disputes and litigation . . . , " the Green Book provides "the exclusive

procedures for the prosecution and resolution of all claims and disputes under the

Contract."   Green Book, Compl. Ex. 3, p. 46, ECF No. 1-3.   Consistent with the City

Charter, the Green Book dictates the following procedure for "Claim[s] or Dispute[s]:"

> Should the *Contractor* be of the opinion, at any time, that it is entitled to any additional Contract time and/or . . . damages . . . alleged to have been sustained, suffered or incurred by it in connection with the Project, the *Contractor* . . . within ten (10) Calendar Days thereafter *shall file a written notice of the claim with the Engineer ['duly authorized representative of the City of Baltimore'].* Within thirty (30) days . . . the Contractor shall file a written itemized statement of the factual and contractual details, amount, and supporting documents relating to each such claim . . . ."   *Id.* at 15, 46-47 (emphasis added).

After a claim is filed with the Engineer, a multi-step administrative review process follows. *Id.* at 47-48. This process begins with initial review by the "Inspector assigned to the project, the Engineer, and the Division Head." *Id.* Unfavorable decisions may then be appealed to the Bureau Head and ultimately to the Director of the applicable Department. *Id.* This process must be exhausted before a claim may be submitted for "review on the record by a court of competent jurisdiction." *Id.* at 48. The Green Book states that "[t]he conditions of this section shall be held and taken to constitute a *condition precedent to the right of the Contractor* to prosecute a claim and recover additional time or cost notwithstanding any provisions of the Contract Documents . . . and shall also *apply to all claims by the Contractor* in any way arising out of or relating to the complete project or portions of the project, even though claims and or work involved may be regarded as "outside the Contract." *Id.* at 47 (emphasis added). The Green Book further provides that "nothing in this section shall be held or taken to enlarge in any way the *rights* of the Contractor or the *obligations* of the City under the Contract Documents." *Id.* (emphasis added).

If a Contractor fails to complete a project on time, the Green Book authorizes the City to assess liquidated damages. Section 00 73 83 of the Green Book, "Failure to Complete Work on Time and Liquidated Damages," provides the following:

> Should the Contractor fail to complete fully, and to all intents and purposes, the Work as specified in the Contract Documents on or before the time required therein, inclusive of any *authorized extensions* thereof, the Contractor shall pay to the City such sum, as specified in the Contract Documents, for each and every consecutive Calendar Day thereafter and until and including the day when the said Work shall be completed to all intents and purposes as specified to the satisfaction of the Engineer, which sum is hereby agreed upon, not as a penalty, but as liquidated damages which the City has suffered by reason of such failure by the Contractor; provided, that the Board of Estimates shall have the right at their discretion to extend the time for the

4

completion of the Work beyond the time herein stated. The City shall be fully authorized and empowered to deduct and retain the amount of any damages, determined as stated before, for each consecutive Calendar Day that the Contractor shall be in default in completing the Work after the time fixed in the Contract, or after any later date to which the time for completion may have been extended by the Board of Estimates, from any monies due or to become due to the Contractor under the provisions of the Contract at any time after such damages are so incurred. The permitting of the Contractor to go and finish the work or any part of it after the time fixed for its completion, or after the date to which the time for completion may be extended, shall in no way operate as a waiver on the part of the City of any of the City's rights under the Contract. *Id.* at 46.

## IV.    Execution of the Contracts

The SC 852R and SC 845R Contracts both involved construction of components for the Patapsco Wastewater Treatment Plant. [3]   Compl. at ¶ 16, ECF No. 1.  The SC 852R Project started first, but completion of that project was dependent on completion of the SC 845R project.  *Id.* at ¶ 17.  "During the course of both Projects," BBII contends that it "encountered a series of design errors, omissions and inconsistencies . . . , the City directed BBII to perform extra and additional work . . . , and [the City] continues to actively interfere with and hinder BBII's performance and completion of both Projects."  *Id.* at ¶ 18. Therefore, BBII has "submitted multiple requests for additional time and compensation." *Id.* at ¶ 19.  "The Contract[s] clearly provide[] that BBII is entitled to additional costs and time resulting from events for which it is not responsible."  *Id.* at ¶ 43.  However, rather than processing these pending requests, the City has declared BBII in default due to its delayed completion of both projects and has taken "liquidated damages from BBII while at the same time demanding BBII fully pay all subcontractors and suppliers."  *Id.* at ¶¶ 20, 25.

---

[3] These projects are only two of a total of three projects awarded to BBII by the Mayor and City Council of Baltimore, all related to the Patapsco Wastewater Treatment Plant.  The third project was the subject of a prior action for declaratory relief filed in this Court by Fru-Con Construction, LLC, which this Court dismissed for lack of subject matter jurisdiction.  *See Fru-Con Construction,* 2014 WL 6675625 at * 1.

As a result of the City's actions, BBII may have to report to potential clients that it has been held in default and assessed liquidated damages. *Id.* at ¶ 37. Clients "may then use this information to determine whether BBII is pre-qualified or permitted to bid or propose" on future projects. *Id.* "If BBII is not pre-qualified or permitted to bid or propose on public works projects, the result will have grave economic consequences on BBII's ability to continue as a business. Even if BBII is pre-qualified, a past default or assessment of liquidated damages can cause BBII to be ranked" lower than competitors. *Id.* at ¶ 38. Additionally, BBII claims that its "reputation with potential and existing clients, competitors, partners, subcontractors and suppliers is irreparably damaged." *Id.* at ¶ 39. Finally, BBII has "continued to fully fund the Project and pay its subcontractors and suppliers even though the City has wrongfully withheld money from BBII for acknowledged work performed. Thus, BBII has been forced to finance the City's Projects based upon the City's improper contract administration." *Id.* at ¶ 40.

BBII contends that the administrative dispute resolution process detailed in the Green Book applies to "claims the City has against BBII including, but not limited to, claims the City has for delays and associated liquidated damages." *Id.* at ¶ 22. Therefore, "[w]hen the City declared BBII to be in material breach and default under the Contracts and assessed and took liquidated damages without pursuing its claim and dispute through the dispute resolution process, the City abandoned and materially breached its Charter and the Contracts. The City's abandonment and material breach have resulted in irreparable harm to BBII." *Id.* at ¶ 23. For these reasons, BBII has filed the present action for material breach of contract, breach of implied warranty of plans and specifications, and for a declaratory

judgment interpreting the terms of the contracts and defining the parties' rights and obligations. *Id.* at ¶ 177-245.

## STANDARD OF REVIEW

### I.   Motion to Dismiss Under Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). With respect to a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799. Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

### II.   Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon filing of appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act, however,

does "not provide a source of jurisdiction which is independent of substantive federal law." *Gibralter, P.R., Inc. v. Otoki Group, Inc.*, 104 F.3d 616, 619 (4th Cir. 1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 16-17 n.14 (1983)).

The United States Court of Appeals for the Fourth Circuit has "held that district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998); *see also Wilton v. Seven Falls Company*, 515 U.S. 277, 286 (1995. Further, the Fourth Circuit has provided guidance on the exercise of this discretion. Declaratory judgment should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Aetna Cas. & Sur. Co.*, 139 F. 3d at 422 (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F. 2d 321, 325 (4th Cir. 1937)).

In an action seeking declaratory judgment, there is still a requirement imposed by Article III of the Constitution that there be a case or controversy. *See Rental Tools & Equipment Co. Int'l, Inc. v. Marsh & McLennan, Inc.*, 1989 WL 234697, *4 (D. Md. Sept. 25, 1989). Although this determination can be difficult for declaratory judgment actions, "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

## ANALYSIS

In support of its Motion to Dismiss, the City relies on this Court's decision in *Fru-Con Const., LLC v. Mayor and City Council of Baltimore*, No. RDB-14-0434, 2014 WL 6675625 (D. Md. Nov. 24, 2014), a case involving essentially the same parties as this case and another project at the Patapsco Wastewater Treatment Plant. *See Fru-Con Const.,* 2014 WL 6675625 at *1. In that case, the Plaintiff Fru-Con Construction, LLC requested a declaration interpreting its rights under a contract with the City, which was governed by the same terms as the contracts in this case. *Id.* at 2-4. This Court dismissed that action, concluding that "Fru-Con must exhaust the administrative procedures set forth by the Contract before it may seek judicial review." *Id.* at 8. The City contends that Plaintiff now raises many of the same claims previously rejected by this Court in *Fru-Con.* Pl.'s Mem., p. 3, ECF No. 9-1. Therefore, the City argues, the present action should likewise be dismissed because of Plaintiff's failure to exhaust administrative remedies. *Id.* at p. 3.

## I.     Maryland Law Establishes a Strong Preference for Administrative Exhaustion

Under the guidance of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity must apply federal procedural law and the substantive law of the forum in which the court sits. *See, e.g., Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n. 3 (4th Cir. 2013). Maryland law establishes a strong preference for administrative exhaustion  that may  be  excused  only if a  challenger can  demonstrate that the reviewing

agency is "palpably without jurisdiction."[4] *Heery Int'l, Inc. v. Montgomery County, Maryland*, 862 A.2d 976 (Md. 2004). As the Maryland Court of Appeals explained, "[w]here an administrative agency has primary or exclusive jurisdiction over a controversy, the parties to the controversy must ordinarily await a final administrative decision before resorting to the courts for resolution of the controversy." *Heery*, 862 A.2d at 981 (quoting *State v. Bd. of Contract Appeals*, 773 A.2d 504, 510 (Md. 2001)); *see also Converge Servs. Group, LLC v. Curran*, 860 A.2d 871, 882 (Md. 2004) (explaining that, where administrative exhaustion is "explicitly direct[ed]," the courts' "policy is set clearly by the General Assembly to maintain the uniformity of the regulatory scheme" by adhering to the exhaustion requirement). Federal law establishes a similar preference for exhaustion of administrative procedures. As the United States Supreme Court concluded, "[w]here Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992); *see also Thetford Properties IV Ltd. Partnership v. U.S. Dept. of Housing and Urban Development*, 907 F.2d 445, 448 (4th Cir. 1990) (recognizing the "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted" (quoting *Meyers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938))).

---

[4] The Maryland Court of Appeals has never addressed the question of whether the specific administrative procedures at issue are substantive or procedural law. In *Lewis v. Waletzky*, 31 A.2d 123, 134 (Md. 2011), however, the Maryland Court of Appeals explained that, among other factors, a court should look to whether a provision "establish[es], den[ies], or define[s] a cause of action . . . [or] prescribe[s] how liability is to be determined." In contrast to the administrative filing requirements in *Lewis*, the requisite administrative procedures in this case set forth precisely the manner in which liability is determined, such as who reviews a claim in each step of the administrative review. *See* Compl. Ex. F, at 64-66. Moreover, the Green Book, in accordance with the City Charter, establishes a cause of action for an aggrieved party who has already exhausted the administrative remedies. *See id.* at 66. As both Maryland law and federal law recognize a strong preference for exhaustion, the substantive-procedural dichotomy does not affect the outcome of the parties' present dispute.

This general rule of administrative exhaustion is not absolute, but a party attempting to circumnavigate the prescribed procedures bears a heavy burden. To meet this burden is "a long and arduous road," as the complaining party must demonstrate that "a particular agency's actions are so clearly and unequivocally without authority as to be 'palpably without jurisdiction.'" *Heery*, 862 A.2d at 989. The costs of prolonged administrative litigation are insufficient. *See id.* Rather, the party must show some "irreparable injury" if it follows the prescribed administrative procedures. *Id.* (citing *West v. Bergland*, 611 F.2d 710, 718 (8th Cir. 1979)).

The exhaustion requirement is not an arbitrary decision to favor administrative agencies over the challengers. Rather, this requirement protects the twin objectives of respect for administrative authority and judicial economy. First, exhaustion protects the authority of the administrative agency that promulgated the disputed regulations by giving that agency the opportunity to interpret its own regulations. *See Heery*, 862 A.2d at 986 (stating that "[w]e consistently have held that statutes should be interpreted in the first instance in contested case by the administrative agency"); *see also Maryland Comm'n on Human Relations v. Mass Transit Admin.*, 449 A.2d 385, 389 (Md. 1982) (concluding that exhaustion promoted "the principle that the agency's construction of a statute which it administers is entitled to weight"). In particular, if the regulations require "specialized knowledge or expertise regarding the underlying subject matter," then agency adjudicators proficient in that "specialized knowledge" are better suited to make the initial interpretation. *Heery*, 862 A.2d at 986.

Second, exhaustion of administrative procedures promotes judicial economy by "preventing piecemeal and interlocutory appeals from administrative decisions." *Id.* Such appeals delay both the administrative and judicial processes, while failing to resolve the entire dispute. In contrast to "piecemeal . . . appeals," the exhaustion requirement allows the parties to develop a full and complete record of the circumstances of their dispute. *See id.* This complete record, plus the agency's interpretation of its own statute, put the reviewing court in the best position to review the administrative decision and bring finality to the parties' dispute. Moreover, if an agency erred in its initial response to the dispute, the agency may correct its mistakes during the administrative review, and so spare a court from doing the same. *See McCarthy*, 503 U.S. at 145.

In this case, BBII must exhaust the administrative procedures outlined in its Contracts and incorporated documents.  The Green Book, pursuant to the directive of the Baltimore City Charter, mandates that the prescribed administrative procedures are "the exclusive procedures for the prosecution and resolution of all claims and disputes under the Contract." Green Book, Compl. Ex. 3, p. 46, ECF No. 1-3.  The Green Book is clearly not silent as to the proper remedy for disputes under the Contract, nor are the prescribed administrative procedures merely optional. Rather, the language explicitly requires administrative exhaustion before the complainant may submit the dispute to "review on the record by a court of competent jurisdiction pursuant to the Baltimore City Charter." *Id.* at 48.

Moreover, BBII has failed to demonstrate that the reviewing agency is "palpably without jurisdiction." *Heery*, 862 A.2d at 989. This excuse requires a complaining party to plead an "irreparable injury" if it is forced to navigate the prescribed administrative process.

*Id.* Plaintiff contends that its administrative remedies "under the City Charter and the Green Book have been exhausted, waived or otherwise excused" and raises several arguments in support of this contention.  Compl. at ¶ 24, ECF No. 1.  However, at least one of them has been previously rejected by this Court in *Fru-Con*, 2014 WL 6675625, and the remaining arguments are equally unpersuasive.

## II.    The City Has Not "Abandoned" the Administrative Review Process Such That Plaintiff is Now Excused from Exhausting Its Administrative Remedies

First, Plaintiff contends that the City itself has "abandoned" the administrative process incorporated into their contract "by assessing and taking liquidated damages directly from BBII" before adjudicating BBII's pending requests for additional time and compensation.[5]  *Id.*  However, the Green Book does not require that the City follow any administrative review procedures prior to taking liquidated damages.  The Green Book specifically states that its provisions on administrative review "shall be held and taken to constitute a condition precedent to the right of the *Contractor* to prosecute a claim . . ."  Green Book, Compl. Ex. 3, p. 47, ECF No. 1-3.  Additionally, it provides that "nothing in this section shall be held or taken to enlarge . . . the *obligations* of the City under the Contract Documents."  *Id.* (emphasis added).  Furthermore, nothing in the Green Book's "Failure to Complete Work on Time and Liquidated Damages" section requires the city to exhaust an administrative review process before assessing and taking liquidated damages.  *See id.* at 46.

Plaintiff relies primarily on the plain meaning of Article II, § 4(A)(g) of the Charter of Baltimore City and on the plain meaning of the Green Book's section on claims and

---

[5] If BBII's requests are approved through the administrative review process, BBII will be entitled to additional time and compensation, and any delays will be excused.  As a result, the City would not be entitled to assess liquidated damages and would be required to make payment to BBII.

disputes, both of which describe administrative dispute resolution procedures.  Because the Charter refers to "a dispute between the parties" and the Green Book governs "all claims and disputes under the Contract," Plaintiff argues that all claims, even those raised by the City against the Contractor for liquidated damages must undergo administrative review. However, Plaintiff ignores the additional language, cited *supra*, which specifies that administrative exhaustion is a "condition precedent" to filing suit for the Contractor alone. Furthermore, the very fact that the parties debate the applicability of the administrative review provisions to claims brought by the City suggests that this case should be dismissed. The Court of Appeals of Maryland in *Heery* indicated that questions of statutory interpretation, like this one, should be decided administratively before proceeding to judicial review.  *Heery*, 862 A.2d at 986 ("Whether the County Code and Procurement Regulations in the present case contemplate a claim initiated by the County against a contractor 'is a typical statutory interpretation or application issue to be determined by a final administrative decision and to be judicially reviewed' only after the administrative remedy has been exhausted.") (quoting *State Comm'n on Human Relations v. Freedom Express/Domegold, Inc.*, 825 A.2d 354, 361 (Md. 2003).

Additionally, BBII is incorrect that the City has "abandoned" the administrative process.  BBII admits that the City has rendered preliminary decisions on "some" of its claims.  *See* Compl. at ¶ 42, ECF No. 1.  BBII simply alleges that they have not been "finally addressed."  *Id.*  Administrative review is a multistep process, as detailed in the Green Book, and the contract did not place time limits on that process.  *See* Green Book, Compl. Ex. 3, p. 48, ECF No. 1-3.   Furthermore, it's not clear that even an "illegal" delaying of the

administrative process by the City would necessarily excuse BBII from exhausting its administrative remedies. *See Soley v. State Comm'n on Human Relations*, 356 A.2d 254, 258 (1976) ("We find no authority, therefore, for the proposition that there need be no exhaustion of a statutory or administrative remedy where the act of an administrative agency is alleged to be ultra vires or illegal."). Consequently, Plaintiff has failed to meet the high burden of demonstrating that they City is "palpably without jurisdiction" to administratively decide its claim.

## III. Complying with the Administrative Review Requirement Will Not Cause Plaintiff To Suffer "Irreparable Injury"

Second, Plaintiff argues that it has been "irreparably harmed by the City's abandonment of the administrative process . . . , by the City's unreasonable and unwarranted delay in those proceedings, and by the City's wrongful finding of default and wrongful assessment of liquidated damages." Compl. at ¶ 24, ECF No. 1. Plaintiff contends that "[t]he irreparable injury BBII has suffered and will continue to suffer cannot be remedied through the administrative process." *Id.* As stated *supra*, an administrative exhaustion requirement is not necessarily excused by illegal actions on the part of an administrative agency, *see Soley*, 356 A.2d at 254, much less by unreasonable and unwarranted delay in those proceedings. As evidence of "irreparable harm," Plaintiff contends that it will need to report to future clients that the City has held it in default and assessed liquidated damages. *See* Compl. at ¶ 37, ECF No. 1. As a result, it may not be eligible to bid on certain projects or may have lower standing in the bidding process. *Id.* at ¶ 38. Even if it is pre-qualified to bid,

BBII contends that its reputation will be "irreparably damaged,"[6] and that it has been forced to pay for the projects itself ever since the City held it in default. *Id.* at ¶¶ 39, 40.   Any payments that Plaintiff makes or has made to fund the project pending a determination of its claim, whether administrative of judicial, do not constitute "irreparable harm."   An eventual Judgment in Plaintiff's favor would compensate Plaintiff for its monetary loss. *See Sink v. Morton*, 529 F.2d 601, 604 (4th Cir. 2015) ("Irreparable harm presupposes the absence of an available remedy for relief, whether administrative or judicial.").

Furthermore, the costs of prolonged administrative litigation do not qualify as "irreparable injury." *Heery*, 862 A.2d at 989.   The remaining harms alleged by Plaintiff are too speculative to meet the high standard of "irreparable injury" necessary to excuse administrative exhaustion requirements.   The party attempting to circumnavigate the prescribed procedures bears a heavy burden.   An exception to the administrative exhaustion requirement for irreparable injury "will be recognized only under the most equitable of circumstances as the exception works against the sound policy favoring completion of available administrative processes and prevention of disruption of those processes."   *See id.* Therefore, Plaintiff's second argument fails.

---

[6] Plaintiff argues "[i]t is settled law in Maryland that damage to one's business reputation is fairly characterized as irreparable harm."  Pl. Opp'n, p. 12, ECF No. 16. (citing *Legacy Inv. And Mgt, LLC v. Susquehanna Bank*, No. WDQ-12-2877, 2014 WL 836077 (D. Md. Feb. 28, 2014)).   However, *Legacy* was a trademark infringement case in which the Plaintiff sought default judgment and a permanent injunction against Defendants' infringement of its trademark.  *Legacy*, 2014 WL 836077, at *4.  While this Court did conclude that harm to Plaintiff's "business, goodwill, and reputation" was sufficient to show "irreparable injury," it was for the purpose of granting a permanent injunction, *see id.*, not for overcoming Maryland's well-established preference for administrative adjudication of contract disputes.

**IV.   Plaintiff is Not Excused From Exhausting Its Administrative Remedies on Account of the City's Alleged Bias or Predetermination of Its Claims**

Third, Plaintiff objects that "[t]he City has predetermined the outcome for each of BBII's . . . claims for compensable extensions of time, as well as BBII's other claims for damages due to design errors and omissions and directed extra work."  Compl. at ¶ 24, ECF No. 1.  Additionally, Plaintiff objects that "[t]he City has demonstrated a prejudice and bias against BBII which taints the entire administrative process . . . and cannot be cured" and, therefore, that "pursuit of BBII's claims through the administrative process and dispute resolution provisions would be futile." *Id.*  This Court rejected this line of argument in *Fru-Con*, and rejects it now for the same reasons.  *See Fru-Con*, 2014 WL 6675625 at *6.

In *Fru-Con*, the Plaintiff contended that "because City employees conduct the review of any disputes related to the Contract, they are predisposed to favor their own position." *Id.*  This Court squarely rejected this "bias" argument because it "ignore[d] that a fundamental purpose of the exhaustion requirement is its protection of an administrative agency's authority to interpret its own regulations, statutes, and other guidelines.

The City, as the entity promulgating the Green Book, has the requisite 'specialized knowledge' to interpret and clarify the alleged ambiguities of the Contract.  If Fru-Con, after exhausting the administrative procedures, is not satisfied with the City's conclusions, then it may submit its claim for review by this Court." *Id.*[7]

---

[7] In its Response brief, Plaintiff contends, for the first time, that "[t]he City's position is also contrary to BBII's basic constitutional due process rights."  Pl. Opp'n, p. 11, ECF No. 16.  However, BBII does not allege anywhere in its Complaint a due process claim against the City.  BBII's action is a "Complaint for Material Breach of Contract, Breach of Implied Warranty, and Declaratory Relief."  Additionally, Defendant correctly cites a litany of cases for the proposition that "a breach of contract claim does not give rise to a claim under 42 U.S.C. § 1983" for violation of constitutional rights.  Def's Reply, p. 9, ECF No. 17 (citing, *e.g., Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001) ("claim for payment . . . is an interest . . . that

17

In conclusion, BBII must exhaust the administrative procedures set forth by the City Charter and the Green Book before it may seek judicial review. Although the exhaustion requirement is not absolute, BBII has failed to demonstrate any irreparable injury that would excuse this requirement. Allowing BBII to circumnavigate the prescribed administrative procedures would frustrate the goals of administrative exhaustion, and judicial intervention before exhaustion would undermine the authority of the City to interpret its own regulations. Accordingly, Defendant's Motion to Dismiss is GRANTED.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 9) is GRANTED.  Accordingly, all claims by Plaintiff Balfour Beatty Infrastructure, Inc. against Defendant Mayor and City Council of Baltimore are DISMISSED.

Dated:        March 8, 2016

_____/s/_____
Richard D. Bennett
United States District Judge

---

can be fully protected by an ordinary breach-of-contract suit."); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("[i]t is well established that a simple breach of contract does not rise to the level of a constitutional deprivation."); *Bleeker v. Dukakis*, 665 F.2d 401, 403 (1st Cir. 1981) ("(a) mere breach of contractual right is not a deprivation of property without constitutional due process of law . . . [o]therwise, virtually every controversy involving an alleged breach of contract by a government or a governmental institution or agency or instrumentality would be a constitutional case.")).

18